## EDWARD LYNCH *vs.* J. W. MOORE.

Suffolk.   November 13, 1890. — September 3, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Evidence.*

In an action for an injury inflicted by the defendant's horse on that of the plaintiff, there was evidence tending to show that the horses were left standing in the street facing each other.   The defendant called as a witness a member of a firm whose store was near where the plaintiff's horse was wont to stand, who, after testifying that he had often seen this horse as it stood there, but that all he knew of its habits was what he saw it do with the firm's horses, which he generally turned the other way, was asked, " What was the habit of the plaintiff's horse with reference to other horses standing near ?" and the evidence was excluded. *Held,* that the evidence should have been admitted.

TORT, for injury to the plaintiff's horse.   At the trial in the Superior Court, before *Mason,* J., it appeared that the plaintiff's horse and the defendant's horse were both left facing each other, unattended and unfastened, on Hanover Street in Boston.   The evidence introduced by each party tended to show that his horse was approached and interfered with by the horse of the other party ; and that the injury in question resulted.   The defendant's evidence tended to show that the plaintiff's horse walked up to the defendant's horse, and began to bite his neck in a playful manner, and that in this way the horses and harnesses became entangled, and the injury resulted ; and that the plaintiff's horse was apt to step up to other horses standing near and play with them by biting them on the neck.   The defendant called one Curtis, who was a member of a firm whose shop was situated near where the plaintiff's horse was accustomed to stand, and he testified that he knew the plaintiff's horse, and had seen it standing there two or three times a week; but that all he knew of the habits of the horse was what he saw it do with the horses of the firm, which he generally turned the other way. The witness was then asked, " What was the habit of the plaintiff's horse with reference to other horses standing near? " Upon the plaintiff's objecting, the evidence was excluded, and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in November, 1890, and afterwards, in September, 1891, was submitted on the briefs to all the judges.

*J. A. McGeough*, for the defendant.

*S. J. Thomas*, for the plaintiff.

MORTON, J.   The only exception taken by the defendant relates to the exclusion of the question to the witness Curtis.   The witness had testified that he knew the plaintiff's horse, and had seen it on the stand two or three times a week, but all he knew of its habits was what he saw it do with horses of his own firm, which he generally turned the other way.   He was then asked what was the habit of the plaintiff's horse with reference to other horses standing near.   We think the question must be understood to mean what were its habits with reference to other horses standing near, so far as the observation or knowledge of the witness went.   So understood, we think the witness should have been allowed to answer.   The habit of the plaintiff's horse toward other horses standing near was one of the facts in controversy ;   the plaintiff contending that it could be left standing alone without moving, and the defendant contending that it was apt to step up to other horses standing near and play with them by biting them on the neck.

The fact that the observation or knowledge of the witness of the habits of the plaintiff's horse in this respect was confined to its conduct towards horses belonging to his own firm, would seem to go rather to the weight than to the competency of his evidence.   We cannot say that it would be no evidence of a habit on the part of the plaintiff's horse.   *Day* v. *Ross, ante,* 13.   It may be fairly inferred, from the statement of the witness that he generally turned his own horses the other way, that his answer would be material, and favorable to the defendant.   For these reasons, a majority of the court think the entry must be,

*Exceptions sustained.*